***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Homick and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act and the North Carolina Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. An employee-employer relationship existed between the named employee and the named employer.
3. The named employer is self-insured.
4. There is no issue as to misjoinder or nonjoinder of parties.
5. The applicable average weekly wage is $1,065.48, with a corresponding compensation rate of $710.68 per week.
6. Plaintiff sustained an injury to his back on or about October 4, 2007, that arose out of and in the course of his employment and is compensable.
7. Defendant has provided Plaintiff with an RS-4i muscle stimulator.
8. Dr. Laura Fleck is the authorized treating pain physician.
9. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 (a) Exhibit 1: Pre-Trial Agreement; and
 (b) Exhibit 2: Compilation of Documents, including: Industrial Commission Forms, Orders, Employee's Answers to Interrogatories, Job Description, Personnel File, Job Search Records, Employment Security Commission documents, Tax records, October 4, 2007 Injury Report, report of prior November 21, 1997 back injury at Broyhill, Plaintiff's Motion for Purchase/Provide Long Term Muscle Stimulator for the Employee and Defendant's Response, Plaintiff's Motion for change of treatment to Dr. Stephen David and Defendant's response, and Plaintiff's medical records.
10. In addition, the following exhibits were also admitted into evidence:
 (a) Plaintiff's Exhibit 1: Driving Safety Awards *Page 3 
 (b) Defendant's Exhibit 1: Photographs of Truck
 (c) Defendant's Exhibit 2: Additional Photographs of Truck
 (d) Defendant's Exhibit 3: Broyhill Driver Procedures
 (e) Defendant's Exhibit 4: Plaintiff's Performance Evaluation
 (f) Defendant's Exhibit 5: Plaintiff's personnel file documents
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 65 years old. Plaintiff completed the tenth grade of high school and has not obtained a high school equivalency certificate by passing the General Educational Development Test (GED). Plaintiff holds a Class A Commercial Drivers License and has worked as a long distance truck driver for Defendant for approximately 25 years from October 1983 until May 29, 2008. His duties included operating a tractor trailer throughout the United States for furniture delivery.
2. On October 4, 2007, Plaintiff was injured while delivering furniture in Texas. While attempting to unload the furniture, Plaintiff fell approximately four feet from the truck onto concrete. Plaintiff testified that he experienced pain in his back and hip as well as his entire right side.
3. Prior to the October 4, 2007 injury, Plaintiff had a 1997 back and right hip injury from which he had recovered and returned to work. *Page 4 
4. Plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee on May 30, 2008, maintaining that he sustained an injury to his back and right leg/hip on October 4, 2007, when he fell out of the back of a trailer.
5. Defendant filed a Form 19 Employer's Report of Injury on October 9, 2007, for the back injury that occurred on October 4, 2007. On September 17, 2008, Defendant also filed a Form 63, Payment of Compensation Without Prejudice for medical benefits.
6. Plaintiff completed his deliveries in Texas and returned to North Carolina, where on October 8, 2007, he presented to Dr. David Abernathy, an internist, at Caldwell Industrial Clinic. Dr. Abernathy diagnosed Plaintiff with lower back pain and prescribed Tramadol. Dr. Abernathy released Plaintiff to return to work as a truck driver with restrictions of no loading or unloading from his first appointment on October 8, 2007, through March 28, 2008.
7. Sheila Travis, Fleet Manager for Defendant, testified that drivers do have the option of denying a dispatch that required loading or unloading or paying someone to perform the loading and unloading duties. Plaintiff testified that he did not think he would be able to deny a dispatch because it required heavy lifting. Plaintiff further testified that although he had been assigned "no touch driving," he had driven two loads that required the unloading of his cargo and that in both circumstances he hired someone to unload the truck.
8. On March 28, 2008, Dr. Abernathy referred Plaintiff for evaluation by an orthopedic surgeon.
9. On April 11, 2008, Plaintiff presented to Dr. James Stanislaw, an orthopedic surgeon with Carolina Orthopaedic Specialists. Dr. Stanislaw reported that Plaintiff had a five-month history of back pain that began when he fell from the back of a tractor trailer. Dr. Stanislaw diagnosed degenerative disk disease, back pain, and right leg radiculitis. Dr. Stanislaw *Page 5 
continued the same medications as Dr. Abernathy, ordered an MRI, and released Plaintiff to return to work as a truck driver within the no lifting restriction.
10. The MRI was performed on April 26, 2008, and Dr. Stanislaw reported that it revealed encroachment on the existing nerve root at L5-S1 predominantly by bony degenerative change and some disk desiccation as well as degenerative changes encroaching on the left neural exit foramen at L4-5 with multi-level degenerative disk disease. Dr. Stanislaw recommended that Plaintiff be treated by Dr. Maxy, an orthopedic specialist, and by pain management with lumbar epidural steroid injections. Dr. Stanislaw continued Plaintiff's work restriction of no lifting and allowed Plaintiff to continue to work as a long distance truck driver as long as Plaintiff was able to do so safely while taking the prescription medication of Tramadol. Tramadol is a narcotic-like pain reliever that was prescribed for his work injury.
11. After having worked for approximately 25 years for Defendant, on May 29, 2008, Plaintiff was terminated for not immediately reporting an accident to the Safety/Compliance Officer, for having three accidents in 18 months, for allegedly tampering with the truck's speed governor, and for leaving his truck in disorderly condition.
12. At the hearing, Plaintiff testified that he had neither tampered with the truck's governor nor left the truck in disorderly condition. With regard to the three accidents, Plaintiff testified that one occurred when the tractor-trailer unexpectedly moved approximately ten feet due to a brake failure. Plaintiff's tractor was scratched in this accident. Plaintiff testified that the second accident occurred when someone hit his truck at a truck stop and left without any notice, while Plaintiff was showering in the building. The third accident occurred, as Plaintiff testified, while Plaintiff was reversing the truck and accidently broke a truck side mirror. *Page 6 
13. Although terminated from his employment, Plaintiff continued to seek and receive medical treatment for his back injury. On July 2, 2008, Plaintiff presented to Dr. Hansen, a pain management specialist. Dr. Hansen reported that Plaintiff had been followed by Dr. Maxy and was considered to be "non-surgical." Dr. Hansen diagnosed Plaintiff with degenerative spinal disease of the lumbar spine with facet syndrome. Dr. Hansen recommended a lumbar epidural, a trial of Hydrocodone, and prescribed Lyrica for myofascial mechanical pain.
14. On July 23, 2008, Dr. Hansen recommended an RS-4i stimulator and the RS-LB Low Back Conductive Garment for daily home therapy for Plaintiff. Dr. Hansen explained that the muscle stimulator relaxes muscle spasms, prevents or retards muscle atrophy, maintains or increases range of motion, and increases local blood circulation. Although there was some delay in the approval of this device due to disputed reasons, it was ultimately approved and provided to Plaintiff.
15. On August 7, 2008, Dr. Hansen administered a lumbar epidural steroid injection at L5-S1. A second injection was administered on August 28, 2008, and a third, a right L5 transforaminal epidural injection, was performed on September 15, 2008. Plaintiff received some limited relief from the injections.
16. Penny Mitchell, a family nurse practitioner under Dr. Hansen's supervision, first treated Plaintiff on July 23, 2008, and continued until his last visit in March 2009. Ms. Mitchell reported that Plaintiff had no significant improvement with conservative treatment and referred him back to his surgeon. Ms. Mitchell explained that further interventional treatment was not considered because of the lack of success with the first three injections.
17. On November 3, 2008, Plaintiff presented to Dr. Stanislaw, who recommended an EMG and nerve conduction study in order to corroborate Plaintiff's complaints as well as yield *Page 7 
additional information for a spine specialty evaluation, particularly as it pertained to the right L5-S1 nerve root. If surgical intervention was not indicated, Dr. Stanislaw would recommend an injection of the hip bursa or a trigger point injection. Dr. Stanislaw released Plaintiff from work with the restriction of no lifting over 40 pounds.
18. By an October 21, 2008, Administrative Order, Plaintiff was allowed a second treatment opinion with Dr. Stephen David, an orthopedic surgeon with training in spinal disorders.
19. On January 20, 2009, Plaintiff presented to Dr. David, who determined that Plaintiff is a suitable candidate for L4/5 and L5/S1 decompression and stabilization surgery because of his work injury. Preliminarily, Dr. David recommended conservative treatment consisting of a trial of physical therapy and then, if Plaintiff failed to improve, he would recommend a spinal fusion. Dr. David opined that Plaintiff is unable to perform his duties as a long distance truck driver, even if he did not do any loading, as Plaintiff is unable to remain in a seated position for the number of hours required. Dr. David opined to a reasonable degree of medical certainty that Plaintiff's fall on October 4, 2007, significantly exacerbated his underlying back condition.
20. After presenting to Dr. David, Defendant returned Plaintiff to Dr. Stanislaw on February 9, 2009, at which time he agreed to transfer care to Dr. David.
21. On March 30, 2009, Plaintiff presented to Dr. Laura Fleck, an Asheville neurologist, who opined that Plaintiff suffered from "lumbar radiculagia on the right side and potentially facet-mediated lumbar pain." Dr. Fleck testified to a reasonable degree of medical certainty that Plaintiff's symptoms were the result of his October 4, 2007, work injury. Dr. Fleck *Page 8 
prescribed the same RS-4i stimulator that Dr. Hansen had and opined that Plaintiff will need it the remainder of his life.
22. Dr. Fleck further opined that Plaintiff did not meet surgical criteria and therefore she would not recommend back surgery for Plaintiff or referral for treatment to a back surgeon. According to Dr. Fleck, those criteria include severe intractable pain with which one cannot live, progressive loss of strength in the leg, and impairment of bowel and bladder function. According to Dr. Fleck, Plaintiff met none of these criteria. Dr. Fleck further opined that if Plaintiff exceeded his restrictions or ceased the recommended exercise program, his back muscles may weaken and augment the degenerative changes, worsening Plaintiff's condition. Dr. Fleck also recommended continuation of Plaintiff's prescription medications of Lyrica, Lidoderm patches, Ultram, and Amitriptyline, as prescribed by Dr. Abernathy.
23. Plaintiff presented to Dr. Fleck on three additional occasions, May 4, 2009, June 24, 2009, and June 29, 2009, at which time Dr. Fleck opined Plaintiff was at maximum medical improvement. During this time, Dr. Fleck continued conservative care consisting of medication and physical therapy.
24. With regard to Plaintiff's ability to perform his work duties, Dr. Fleck opined that Plaintiff is permanently restricted to light duty, which would include occasional lifting of up to twenty (20) pounds, frequent lifting of under eight (8) pounds, the ability to alternate sitting and standing every fifteen (15) to twenty (20) minutes, and no operation of heavy equipment. Dr. Fleck opined that Plaintiff would not be able to load or unload a tractor-trailer, due to the lifting restrictions. In addition, due to the requirement that Plaintiff alternate between sitting and standing every fifteen (15) to twenty (20) minutes, Dr. Fleck did not think it was realistic for *Page 9 
Defendant to expect Plaintiff to be able to perform his duties as a long distance truck driver. Accordingly, Dr. Fleck recommended that Plaintiff participate in vocational rehabilitation.
25. Dr. Fleck opined that although Plaintiff continued to perform his job duties for approximately thirty-four weeks after his October 4, 2007, injury, she would not have recommended that he return to that position since it exceeded what she believed Plaintiff was capable of performing and may be the reason Plaintiff is still symptomatic.
26. Dr. Fleck opined that she had no reason to believe that Plaintiff had been anything other than truthful and forthright with her.
27. At his deposition, Dr. David testified that Plaintiff was unable to perform his duties as a long distance truck driver, as he would be unable to remain in a seated position for the number of hours required. Dr. David opined that he would be concerned if Plaintiff returned to his position as a truck driver while he was still symptomatic.
28. Ms. Mitchell, the family nurse practitioner whom Dr. Hansen supervises, testified that during the period in which she treated Plaintiff, from July 23, 2008, through March 2009, she would not have released Plaintiff to return to his position with Defendant as she was concerned that the pain medication, which Plaintiff had been prescribed and was taking for his October 4, 2007, work injury, would have interfered with his ability to safely operate his vehicle. Ms. Mitchell testified that in order for Plaintiff to return to his position with Defendant, he would have had to undergo neurocognitive testing to determine if he could safely operate the truck while taking his prescription medication.
29. At the hearing before the Deputy Commissioner, Plaintiff testified that he has attempted to obtain employment as a truck driver since his termination with Defendant. Plaintiff's job search log was introduced into evidence and indicated that since his termination on May 29, 2008, *Page 10 
Plaintiff made weekly contacts to various companies that employ truck drivers. Plaintiff testified that any available positions were not within his physical restrictions. The undersigned find by the greater weight of the evidence that Plaintiff has conducted a reasonable job search without success and that Plaintiff's inability to find or hold other employment is related to his work injury.
30. After his termination on May 29, 2008, Plaintiff filed for unemployment benefits with the Employment Security Commission, and was approved for $476.00 per week. Shortly before the hearing, Plaintiff's weekly unemployment benefit was raised to $501.00 per week.
31. The facts leading to Plaintiff's termination on May 29, 2008, are contested. Based on the greater weight of the evidence, the undersigned find that Plaintiff's termination was based on actions for which a non-disabled employee would ordinarily be terminated. As a consequence, Plaintiff's termination constitutes a constructive refusal to perform the work provided. However, at the time of his termination, Plaintiff was still under medical restrictions and the undersigned find by the greater weight of the evidence that Plaintiff's inability to find other employment at wages comparable to those earned prior to the injury is due to his work-related disability.
32. Since Plaintiff continued working with assigned restrictions after the October 4, 2007, injury, he did not sustain any loss of earnings before being terminated on May 29, 2008.
33. As Plaintiff's health care providers have testified that Plaintiff will need lifelong medications, an RS-4i stimulator, and possibly an L4/5 and L5/S1 fusion, there is a substantial risk of the necessity of future medical compensation.
34. Plaintiff would benefit from further treatment for his compensable injury with Dr. Laura Fleck, a pain management specialist and occasional monitoring by Dr. Stephen David, to determine if surgery becomes necessary. *Page 11 
35. The undersigned find that this matter has not been brought, prosecuted, or defended without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 4, 2007, Plaintiff sustained an admittedly compensable injury by accident to his lumbar spine arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. An employee's termination from employment that is attributable to Plaintiff's misconduct, unrelated to the compensable injury, for which a non-disabled employee would ordinarily be terminated, constitutes a constructive refusal to perform the work provided.Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
3. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra.
4. In the present case, the greater weight of the evidence shows that after his termination on May 29, 2008, Plaintiff was capable of some work and made a reasonable, but unsuccessful, effort to find other employment. Demery v. Perdue Farms, Inc.,142 N.C. App. 259, 545 S.E.2d 485 (2001). Therefore, after May 29, 2008, Plaintiff proved that he was disabled from employment due to his compensable injury. N.C. Gen. Stat. § 97-29; Seagraves v. Austin Co. of Greensboro,supra. *Page 12 
5. As a direct and proximate result of Plaintiff's compensable injury by accident on October 4, 2007, Plaintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment. As a result, Plaintiff is entitled to receive ongoing temporary total disability compensation at the rate of $710.68 per week, commencing May 29, 2008, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. As a direct and proximate result of Plaintiff's compensable injuries by accident on October 4, 2007, Plaintiff is entitled to all medical expenses incurred or to be incurred for his lumbar spine injury, including but not limited to periodic evaluations with Dr. Fleck and Dr. Stephen David to monitor Plaintiff's spinal condition, the RS-4i stimulator, and possibly an L4/5 and L5/S1 fusion, for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief or tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Pursuant to N.C. Gen. Stat. § 97-25.1, there is a substantial risk of the necessity of future medical compensation for Plaintiff's lumbar spine. The two year statute of limitations on future medical compensation in N.C. Gen. Stat. § 97-25.1 shall not be imposed for future medical compensation for Plaintiff's lumbar spine. N.C. Gen. Stat. § 97-25.1.
8. Defendant is entitled to a credit for unemployment benefits paid to Plaintiff commencing on May 29, 2008. N.C. Gen. Stat. § 97-42.1
9. This matter has not been brought, prosecuted, or defended without reasonable grounds. Therefore, neither party is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********** *Page 13 
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to a credit for unemployment benefits paid to Plaintiff, and an attorney's fee hereinafter approved, Defendant shall pay ongoing temporary total disability compensation to Plaintiff at the rate of $710.68 per week, commencing May 29, 2008, and continuing until further Order of the Commission. Compensation that has accrued shall be paid in a lump sum, also subject to the aforementioned credit and attorney's fee.
2. Defendant shall pay all past and future medical expenses incurred or to be incurred as a result of Plaintiff's compensable injury by accident to his lumbar spine, including but not limited to periodic evaluations with Dr. Laura Fleck and Dr. Stephen David to monitor Plaintiff's spinal condition, the RS-4i stimulator, and possibly an L4/5 and L5/S1 fusion, for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tend to lessen Plaintiff's period of disability. Medical compensation for Plaintiff's lumbar spine shall extend beyond the two year limitation imposed by statute.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award and subject to a credit for any unemployment benefits paid Plaintiff commencing as of May 29, 2008, is approved for Plaintiff's counsel and shall be paid by Defendant as follows: twenty-five percent (25%) of any compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth (4th) compensation check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
This the 22nd day of June, 2010. *Page 14 
 S/__________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/__________________ STACI T. MEYER COMMISSIONER
 S/__________________ PAMELA T. YOUNG CHAIR *Page 1